1

2

3

4

5

6                     **UNITED STATES DISTRICT COURT**

7                          **DISTRICT OF NEVADA**

8   JONATHAN E. WATKINS,              )        3:15-cv-00346-MMD-WGC
                                      )
9            Plaintiff,               )        **REPORT & RECOMMENDATION**
                                      )        **OF U.S. MAGISTRATE JUDGE**
10      vs.                           )
                                      )
11  JAMES STOGNER, *et al.*,          )
                                      )
12           Defendants.              )
                                      )
13  _____ )

14

15          This Report and Recommendation is made to the Honorable Miranda M. Du, United States

16  District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C.

    § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.
17
            Before the court is Defendants' Motion for Summary Judgment. (ECF Nos. 23, 23-1 to 23-12,
18
    ECF No. 26-1.) Plaintiff filed a response (ECF No. 31), and Defendants filed a reply (ECF No. 32).
19
            After a thorough review, it is recommended that Defendants' motion be granted.
20
21                               **I. BACKGROUND**

22          Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC),

23  proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Am. Compl., ECF No. 7.) The events

    giving rise to this action took place while Plaintiff was housed at Northern Nevada Correctional Center
24
    (NNCC). (*Id.*) Defendants are Isidro Baca and James Stogner.
25
            On screening, Plaintiff was allowed to proceed with claims in Count I for violation of his First
26
    Amendment free exercise rights and the Religious Land Use and Institutionalized Persons Act (RLUIPA)
27
    against Baca and Stogner, as well as a claim in Count III that Stogner violated his rights under the Equal
28
    Protection Clause. (Screening Order, ECF No. 8.) The claims in Count I are based on allegations that

Plaintiff is Muslim, and while a holiday dinner meal is provided for Eid al-Fitr, he was not provided the opportunity for community prayer, khulba (sermon) by a minister, poetry reading, music or guests, and that Defendants prevented outside Muslim volunteers from assisting in supervising the special holiday services. The equal protection claim in Count III is based on allegations that Stogner discontinued contact with the Muslim community representative, Mr. Perkins, because Mr. Perkins was not Catholic or a representative of Stogner's religious beliefs.

Defendants move for summary judgment, arguing there is no evidence Defendants hindered Plaintiff's ability to participate in Eid al-Fitr or that Stogner prevented Plaintiff from meeting with Mr. Perkins.

## II. LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). In considering a motion for summary judgment, all reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250.

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A), (B).

/ / /

/ / /

2

If a party relies on an affidavit or declaration to support or oppose a motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

In evaluating whether or not summary judgment is appropriate, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine dispute as to a material fact; and (3) considering the evidence in light of the appropriate standard of proof. *See Anderson*, 477 U.S. at 248-250. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id*. at 248.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'...In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a genuine dispute of material fact, the opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*,

475 U.S. at 587 (citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Id*. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

> That being said,
>
> [i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

At summary judgment, the court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine dispute of material fact for trial. *See Anderson*, 477 U.S. at 249. While the evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id*. at 249-50 (citations omitted).

### III. DISCUSSION

**A. First Amendment Free Exercise and RLUIPA Claims**

**1. First Amendment**

"The First Amendment, applicable to state action by incorporation through the Fourteenth Amendment, … prohibits government from making a law prohibiting the free exercise [of religion]." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (citations and quotation marks omitted, alteration original). "Inmates retain the protections afforded by the First Amendment, 'including its directive that no law shall prohibit the free exercise of religion.'" *Shakur v. Schriro*, 514 F.3d 878, 883-84 (9th Cir. 2008) (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987)).

To implicate the Free Exercise Clause, a prisoner must establish his belief is both sincerely held and rooted in religious belief. *See Shakur*, 514 F.3d at 884-85. Then, "[a] person asserting a free exercise claim must show that the government action in question substantially burdens the person's practice of her religion." *Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015) (citation omitted). "'A substantial

4

burden … place[s] more than an inconvenience on religious exercise; it must have tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Id.* (quoting *Ohno v. Yasuma*, 723 F.3d 984, 1011 (9th Cir. 2013)).

"The right to exercise religious practices and beliefs does not terminate at the prison door. The free exercise right, however, is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security." *McElyea v. Babbit*, 833 F.3d 196, 197 (9th Cir. 1987) (per curiam); *see also O'Lone*, 482 U.S. at 348; *Cruz v. Beto*, 405 U.S. 319, 322 (1972); *Hartmann*, 707 F.3d at 1122; *Shakur*, 515 F.3d at 883-84. The challenged conduct is "valid if it is reasonably related to legitimate penological interests." *O'Lone*, 482 U.S. at 348 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987), which discusses reasonableness factors: (1) a valid, rational connection between the regulation and interest put forward to justify it; (2) whether there are alternative means to exercise the right; (3) the impact accommodation will have on guards, other inmates and the allocation of resources; and (4) the absence of ready alternatives."

### 2. RLUIPA

Section 3 of RLUIPA provides:

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution … even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person -- (1) is in furtherance of a compelling government interest; and (2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc-1(a). "The Supreme Court has recognized RLUIPA as … [a] 'congressional effort[] to accord religious exercise heightened protection from government-imposed burdens[.]" *Greene v. Solano County Jail*, 513 F.3d 982, 986 (9th Cir. 2008) (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 714 (2005)).

"Under RLUIPA, the challenging party bears the initial burden of proving that his religious exercise is grounded in a sincerely held religious belief …, and that the government's action substantially burdens his religious exercise." *Holt v. Hobbs*, 135 S.Ct. 853, 857 (2015) (citations omitted). "Religious exercise" under RLUIPA is "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). Under RLUIPA, the concept of "religious

5

exercise" "shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution." 42 U.S.C. § 2000cc-3(g).

### 3. Analysis

To reiterate, Plaintiff alleges that the feast of Eid al-Fitr is meant to bring Muslims together to engage in festivities including: community prayer, sermon, poetry reading, music and food, following the month-long fasting during Ramadan. (ECF No. 7 at 4-5.)[1] He avers that since 2012, Baca and Stogner deprived Plaintiff from freely practicing his faith by depriving him of the opportunity to engage in these festive activities. (*Id*. at 5, 6.) He goes on to allege that from 2012 to 2015, Defendants forced upon him and the Muslim community a "Feast of Eid Meal Menu" holiday dinner meal without allowing the accompanying festivities described above. (*Id*. at 8.) He further claims that Defendants denied and prevented outside Muslim volunteers from assisting with and supervising Islamic activities and/or holiday services. (ECF No. 7 at 5.)

As a preliminary matter, the court will address the question of the relevant time period. Defendants contend that it is alleged to be between July 27, 2012 and May 20, 2014. Plaintiff's response, however, references not only 2012-2014, but 2015, 2016 and 2017 as well. The Amended Complaint alleges violations from 2012 through the time it was filed, which was February 29, 2016, which was before the 2016 Eid al-Fitr feast would have occurred. In addition, Plaintiff does concede that the Eid-al-Fitr feast did conform to his practice in 2012. Therefore, the relevant time period is from 2013 to 2015.

Defendants admit that Plaintiff's religious affiliation is Islam, a religious faith group recognized by NDOC, which observes the religious holiday of Eid al-Fitr—a feast celebrating the end of Ramadan. (ECF No. 23 at 2-4.) Defendants contend, however, that during the relevant time period, Plaintiff was scheduled for and permitted to partake in the Eid al-Fitr services in the NNCC chapel. (ECF No. 23 at 3; ECF No. 23-6 (NNCC Chaplain memoranda regarding what inmates were approved to participate in

---

[1] Defendants state in their reply that Plaintiff inserted the word "food" in his restatement of the court's screening order, while it was not actually contained in the screening order. (ECF No. 32 at 4.) The amended complaint, however, does allege that the festivities include community prayer, Khutba (sermon) by minister, poetry reading, music and *food*." (ECF No. 7 at 5, emphasis added.) The amended complaint later alleges that the Defendants forced a holiday meal on Plaintiff. (*Id*. at 8.) While Plaintiff alleges that he did receive a holiday meal, he claims that it was along with the general population. This is an issue the court will discuss in its analysis of whether there was a substantial burden on Plaintiff's religious exercise.

Eid al-Fitr, which included Plaintiff on August 20, 2012, August 8, 2013, July 29, 2014, and July 18, 2015).) Defendants further contend that that the services allowed for communal prayer, and could have included playing music, reading sermons and poetry. (ECF No. 23 at 3; Stogner Decl., ECF No. 23-7 ¶ 16.) They assert that after the services, Plaintiff and the other participating inmates were provided a meal served by the culinary. Insofar as Plaintiff's challenge is predicated on a claim that the meal took place outside of the chapel, Defendants maintain there is no right to eat meals in the chapel during religious holidays, and state they are unaware of any Muslim religious tenet that requires the meal to be consumed in a particular location. (ECF No. 23 at 3-4; Baca Decl., ECF No. 23-12 ¶¶ 6-10.)

In 2013, the Eid al-Fitr feast was recognized during a special group service scheduled for August 8, and inmates were able to have their service in the chapel and then were the first inmates permitted in the culinary for lunch. (Baca Decl., ECF No. 23-12 ¶ 9.) After they were served their meals, the rest of the institution was released to the culinary. (*Id*.) In 2014, inmates were permitted to bring their sack lunches to the chapel to eat during the service for Eid al-Fitr. (*Id*. ¶ 10.) In 2015, the Islamic Prayer Service was recognized on July 18, 2015, in the chapel library, and inmates were able to have the service there as a group service. (*Id*. ¶ 11.)

Insofar as Plaintiff alleges he was not allowed guests at Eid al-Fitr, Defendants argue they are unaware of a Muslim tenet that requires visits from family and friends on Eid al-Fitr, and in any event, they point out that Plaintiff's visitation file indicates he has not had anyone visit him since 2007, nor have there been any requests for a visit since 2009. (ECF No. 23 at 4; Baca Decl., ECF No. 23-12 ¶ 13; ECF No. 23-10 (visiting card).)

With respect to the claim that Defendants denied and prevented outside Muslim volunteers from assisting with and supervising Islamic activities and/or holiday services, Defendants assert that they never received any request by Perkins to volunteer at NNCC. (Stogner Decl., ECF No. 23-7 ¶¶ 15- 17.)

In his response, Plaintiff clarifies that Eid al-Fitr is a feast, and Muslims congregate early in the morning for special prayers, which includes shouting, hugging, and handshakes. (ECF No. 31 at 2 n 1.) Muslims congregate together, share food and gifts and congratulate one another on the successful completion of their fasts during Ramadan. (*Id*.)

/ / /

7

Plaintiff has submitted no evidence in response to the motion that he was ever actually denied the ability to participate in Eid al-Fitr in the relevant years, 2013 to 2015, or that he was not permitted to engage in communal prayer, play music, read sermons or poetry, or have guests attend the services.[2] Nor did he provide any evidence that he or another inmate from the Muslim community at NNCC requested the presence of a volunteer at Eid al-Fitr during this time period.

As to the meal aspect of Plaintiff's claim, Plaintiff's allegations as well as the evidence submitted indicate he was in fact given a meal to celebrate Eid al-Fitr. He provides evidence, however, that during certain years (2013 and 2015), Muslim inmates participating in Eid al-Fitr were given their feast meal along with the other inmates in the culinary. (*See* ECF No. 31 at 39, 41-47; Pl. Decl., ECF No. 31 at 103 ¶¶ 6-7.) This is consistent with the evidence submitted by Defendants that in those years the inmates were summoned to the culinary first for the feast meal, and once they were served, the other inmates were permitted entry to the culinary. (Baca Decl., ECF No. 23-12 at 3 ¶¶ 9.)

Plaintiff does not provide any specific evidence to rebut Baca's statement that in 2014, Muslim inmates participating in Eid al-Fitr were permitted to bring their sack lunch to the chapel, other than a conclusory statement in his declaration that "[i]n the year of 2014 the same occurred[,]" referring to his statement that the meal was served along with the general population in 2013. (Pl. Decl., ECF No. 31 at 103 ¶ 8.) Moreover, Plaintiff does not indicate that he was not allowed to purchase food from the canteen to take to the prayer service during Eid al-Fitr during any of these years.

Importantly, Plaintiff does not state that he was not allowed to sit amongst his fellow Muslim inmates while eating the Eid al-Fitr meal provided by the culinary in 2013, 2014 and 2015, albeit in the presence of other inmates in the culinary, in order to break the fast following Ramadan. He provides no explanation of how this substantially burdened his religious exercise. Therefore, he has not presented evidence so as to raise a genuine dispute of material fact on the issue of whether the practice of serving the meal to the inmates in the culinary after the service substantially burdened the practice of his religion.

/ / /

---

[2] Plaintiff submits documents indicating guests were allowed to participate in the feast in 2003, but provides no evidence indicating guests were precluded in the relevant time frame or that he ever sought to request a guest and his request was denied.

8

Even if the feast of Eid al-Fitr in 2016 was relevant, Plaintiff's only argument is that the feast was approved by Ward and Stogner, but on July 6, 2016, the day it was to take place, it was repealed by Ron Shreckengost. (Watkins Decl., ECF No. 31 at 103.) Shreckengost is not a defendant in this action, and Plaintiff concedes that Stogner approved the feast as prescribed.

Finally, the court will address certain extraneous arguments presented by Plaintiff. Plaintiff mentions that the court found he stated colorable constitutional claims, but the fact that a claim is allowed to proceed on screening does not mean it will survive summary judgment, which is based on evidence and not simply allegations. Plaintiff also says it is disputed whether Defendants are entitled to qualified immunity, even though Defendants did not raise qualified immunity in their motion.

In sum, the court concludes that Plaintiff has failed to raise a genuine dispute of material fact as to whether Defendants substantially burdened his religious exercise under the First Amendment or RLUIPA in connection with the Eid al-Fitr feast; therefore, summary judgment should be granted in Defendants' favor as to these claims.

**B. Equal Protection Claim**

**1. Applicable Legal Standard**

"The Equal Protection Clause requires the State to treat all similarly situated people equally." *Hartmann*, 707 F.3d at 1123 (citing *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985)). "This does not mean, however, that all prisoners must receive identical treatment and resources." *Hartmann*, 707 F.3d at 1123 (citations omitted). The plaintiff must establish that "the defendants acted with an intent or purpose to discriminate against [him] based upon membership in a protected class." Id. (citations and internal quotation marks omitted).

**2. Analysis**

Plaintiff was allowed to proceed with an equal protection claim based on allegations that Stogner told Plaintiff he could not accept the letter of Perkins, or file it with the religious overview committee, because Perkins was not a pope or religious leader of Stogner's faith. (ECF No. 7 at 8-9.) Plaintiff avers that this conduct was motivated by religious bias. (*Id*. at 9.)

Defendants argue that Stogner never received any requests from Perkins to attend Muslim religious ceremonies at NNCC, and in any event, such requests are addressed by the associate warden

of programs. (Stogner Decl., ECF No. 27-7 ¶ 17.) According to Defendants, NDOC records reflect that Perkins is no longer an "active" status volunteer with NDOC, and when he was active, he was only authorized to visit High Desert State Prison (HDSP) and Southern Desert Correctional Center (SDCC), both of which are outside of Las Vegas, where Perkins was living. (Walsh Decl., ECF No. 23-11 ¶¶ 4-5.) The NDOC database does not show any Muslim volunteers approved or active at NNCC between 2012-2015. (*Id*. ¶ 6.)

The only argument Plaintiff supplies in response is a reiteration of his allegation that Stogner told him that he could not accept Perkin's letter or file it with the religious review committee because Perkins "is not a Pope or religious leader of a faith of Stogner's." (ECF No. 31 at 8.)

In a discovery response submitted to the court by Plaintiff, Stogner stated that he had no record or recollection of anything involving NNCC with Perkins, and the last time he recalled having any substantive conversation with Perkins was regarding arrangement of a visit to Ely State Prison (ESP). (ECF No. 31 at 19, response to Interrogatory No. 16.) This is consistent with Stogner's claim that he did not receive any volunteer request from Perkins relative to NNCC.

Plaintiff provides various documents in what appears to be an effort to demonstrate that Jewish inmates could have their meals coinciding with religious holidays or holy days after the general population inmates, and at other times could take their meals to the chapel or to their cells. (*See* ECF No. 31 at 85- 91.) Plaintiff's equal protection claim, however, is based only on the allegation that Stogner allegedly told Plaintiff he could not accept Perkins' letter or file it with the religious review committee because he was not of Stogner's faith, and is not based on allegations concerning the serving of food in connection with religious holidays. Therefore, these documents are not relevant to the equal protection claim proceeding in this action.

Plaintiff also provides a grievance from 2015, concerning an incident in the culinary where he claimed that a culinary staff member named Mike and Correctional Officer Ralston assaulted and hurled insults against his fellow Muslim inmates. (ECF No. 31 at 94-98.) Again, this has no relevance to the equal protection allegations proceeding against Stogner in this action.

Plaintiff's equal protection claim is against Stogner, and his only support for this claim is his bare allegation that Stogner allegedly told him he could not accept Perkins' letter or file it because Perkins

was not of Stogner's faith. He does not include this version of events in his declaration. Nor does he provide any factual details concerning the allegation. For example, he does not state when Perkins allegedly sought to volunteer; whether he sought to volunteer at NNCC; or to whom the request was sent. He does not provide a copy of any request or a declaration from Perkins substantiating his allegation.

Defendants have presented evidence that Perkins was in Las Vegas; Perkins was approved as a Muslim volunteer for prisons outside of Las Vegas; that there is no record of Perkins ever requesting to be approved as a volunteer at NNCC, which is located in the northern part of Nevada; and, that any such volunteer request would have been determined by the associate warden of programs, and not Stogner. Plaintiff provides no evidence to refute these facts. In other words, there is no evidence before the court that Perkins actually made a request to volunteer at NNCC, and was denied because he was not of Stogner's faith. As stated above, Plaintiff cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data; instead, he must provide competent evidence showing a genuine dispute of material fact for trial. *See Matsushita,* 475 U.S. at 587; *Celotex,* 477 U.S. at 324.

In light of Plaintiff's failure to raise a genuine dispute of material fact that Stogner acted with an intent or purpose to discriminate against Plaintiff based on his Muslim faith, summary judgment should be granted in Stogner's favor as to the equal protection claim.

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an order **GRANTING** Defendants' motion (ECF No. 23) and entering judgment in Defendants' favor.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

/ / /

/ / /

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

DATED:  October 25, 2017.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE